CASE 114—PROSECUTION AGAINST J. W. BESS FOR MURDER.—OCTOBER
27.

# Bess v. Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT—WATTS PARKER, CIRCUIT
JUDGE.

DEFENDANT CONVICTED AND APPEALS    AFFIRMED.

HOMICIDE—EVIDENCE—ADMISSIBILITY—CRIMINAL LAW—REFERENCE TO
TESTIMONY ON FORMER TRIAL—COMPELLING DEFENDANT TO TESTIFY
AGAINST HIMSELF—CONSTITUTIONAL LAW—APPEAL.

1. On a prosecution for homicide, where a witness for the
Commonwealth was, on cross-examination, permitted to tell what

Bess v. Commonwealth.

deceased has said to her on Wednesday before the death of deceased on Friday, it was not error to allow the Commonwealth's attorney to interrogate the witness relative to the conversation had with the deceased.

2. The fact that the Commonwealth's attorney propounded a leading question to a medical expert as to the cause of the death of deceased was not prejudicial error where other questions were asked which fully laid the foundation for the admissibility of his opinion.

3. The evidence for the Commonwealth tended to show that deceased was murdered on an afternoon or night and that some of the clothes which had belonged to the deceased were carried to a certain residence by the defendant on the next morning. The disposition of the deceased's clothes by the defendant immediately after the homicide was one of the circumstances which strongly tended in connection with the other facts, to show defendant's responsibility for the crime. HELD, that a contention that the court erred in admitting evidence of the fact that the clothes were found because they were not found from any information which the defendant had given and because he was not connected with the finding of them, was untenable.

4. The fact that a witness for the Commonwealth was asked if he ever saw any woman going in and out of defendant's room was not prejudicial to the defendant, the answer of the witness being in the negative, though the question was not a proper one.

5. Where the evidence for the Commonwealth tended to prove that on the afternoon of the day of the deceased's death the deceased and defendant were driving together in the country, evidence that they were engaged in an excited conversation was admissible, there being evidence from which the jury might conclude that the drive terminated in the death of the deceased.

6. A witness for the Commonwealth at first testified that she had not seen defendant write, but, on having her memory refreshed, testified that he wrote her a receipt once. She was then asked if she was familiar with his handwriting, and responded that she was, and could tell it, HELD, sufficient to qualify the witness to identify certain notes claimed to have been received by the witness from defendant after the death of the deceased, which if written by defendant, tended to establish his guilt.

7. Where defendant on a prosecution for homicide did not testify, but had testified on a former trial in his own behalf, denying that he was driving on the afternoon of deceased's death with the deceased, stating that on that occasion he had a woman other than the deceased in the buggy with him, it was not error to permit

the Commonwealth to prove what his testimony was on the former trial.

8. Where defendant had testified on a former trial in his own behalf, but did not do so on a subsequent trial, the admission of his testimony given on the former trial is not in violation of the Constitution, which protects one from being forced to give evidence against himself.

9. Nor is such evidence in violation of the law which protects one from being prejudiced by having failed to testify for himself.

HENRY G. SNYDER AND J. N. ELLIOTT, ATTORNEYS FOR APPELLANT.

N. B. HAYS AND LORAINE MIX, FOR APPELLEE.
    (The questions discussed in the briefs are principally evidential and as no summary of the points has been made by counsel, the reporter deems it unnecessary to undertake to give a synopsis of them.)

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

This is the second appeal from a judgment of conviction under an indictment charging the appellant with the murder of Martha McQuin Martin. The facts of the case so fully appear in the opinion delivered on the former appeal that we deem it unnecessary to again state them. Bess v. Commonwealth, 116 Ky., 927, 77 S. W., 349, 25 Ky. Law Rep., 1092. We will not attempt to discuss every question raised by counsel for appellant in their brief, because it is evident that they have felt it their duty to call this court's attention to objections and exceptions made on the trial, which, in our opinion, do not merit a discussion. In making this observation it may be added that, in view of the extreme penalty imposed by the verdict and judgment, it was entirely proper for counsel to bring to the attention of the court any ruling of the lower court. The court has considered every question raised by counsel, and passed upon it, whether this opinion indicates that fact or not.

Mrs. Rosa Pence was introduced as a witness for the Commonwealth. On cross-examination she was permitted to tell

what Mrs. Martin said to her on Wednesday before Mrs. Martin's death.  This conversation was brought out by a series of questions by counsel for appellant.  After this was done, it was not error of the court to allow the Commonwealth's attorney to interrogate the witness relative to the conversation had with the deceased.

While the Commonwealth's attorney propounded a leading question to a medical expert as to the cause of Mrs. Martin's death, still other questions were asked which fully laid the foundation for the admissibility of his opinion as to the cause of her death.  The error was not prejudicial in view of the subsequent questions propounded and the answers thereto.

The court admitted evidence of the fact that certain clothes belonging to the deceased were found at the residence of a negro woman by the name of Patsy Holmes.  It is urged that the court erred in admitting this evidence, because the clothes were not found from any information which the defendant had given, and because he was not connected with the finding of them.  The evidence of the Commonwealth tended to show that Mrs. Martin was murdered on a Friday afternoon or night.  There was evidence tending to show that some of the clothes which had belonged to the deceased were carried there by the appellant on the next (Saturday) morning.  The disposition of her clothes by the appellant immediately after she lost her life was one of the circumstances which strongly tended, in connection with the other facts, to show his responsibility for the crime.

The Commonwealth's attorney asked a witness this question: "Did you ever see any woman going in and out of his room?" referring to Bess, the appellant.  While the question was not a proper one, as it did not confine the inquiry as to whether the witness had seen Mrs. Martin going in

and out of the room, still he was not prejudiced, as the wit-
ness answered that he had not seen any woman going in
and out of his room.

The evidence of the Commonwealth tended to prove that
Friday afternoon the deceased and appellant were driving in
the country together. The witness was permitted to testify
that they were engaged in an excited conversation. It was
certainly competent to prove the conduct of the parties to-
ward each other on that occasion, because there was evi-
dence from which the jury might conclude that that was the
drive which terminated in Mrs. Martin's death.

Mrs. Mary Porter was permitted to identify certain notes
which it is claimed she received from appellant after the
death of Mrs. Martin. If he wrote them, they strongly tend-
ed to establish his guilt. It is claimed that she did not
qualify herself to testify that they were in the handwriting
of the appellant. She first said that she had not seen him
write. Then having her memory refreshed by the question.
"Have you seen him write some receipts?" she replied:
"Oh, yes, he wrote me a receipt once." She was then asked
if she was familiar with his handwriting, and she responded
that she was, and could tell it. We are of opinion that she
qualified herself to give an opinion as to whether the notes
were in the handwriting of the appellant.

The evidence introduced by the Commonwealth on the
first trial as on the last one tended to show that deceased
and appellant were driving together on Friday afternoon.
On that trial appellant testified in his own behalf, and de-
nied he was driving on Friday afternoon with the deceased,
but testified that on that occasion he had Maude Fleming
in the buggy with him. He did not testify on the last trial,
but the court permitted the Commonwealth to prove what
his testimony was on the former trial as to the person who

was with him in the buggy on the Friday afternoon. The purpose of this was to show that he was fabricating evidence to destroy or impeach incriminating evidence introduced against him by the Commonwealth. Had he made the false exculpatory statement out of court, it could have been proven against him. But the question here is, having voluntarily made it in giving evidence for himself on a former trial, was it competent to prove it on the last trial? A defendant can not be made to give evidence against himself. A failure to testify for himself can not be commented on or used against him on his trial. When he does become a witness for himself, he occupies the position of any other witness introduced on the trial. To prove on the last trial what he said voluntarily in giving his evidence on the former trial is not making him give evidence against himself, nor is it commenting upon his failure to testify for himself. To admit such evidence is not violative of the Constitution, which protects one from being forced to give evidence against himself, nor of the law which protects him from being prejudiced by having failed to testify for himself. Neither the organic nor statutory law was intended to relieve the accused of the incriminating effect of voluntary statements which he may have made out of court or in court, when he voluntarily went upon the witness stand in his own behalf. The decision in the case of Times v. Commonwealth, 77 S. W., 363, 25 Ky. Law Rep., 1233, was not based upon the idea of his right to refuse to give evidence against himself or the right to decline to testify in his own behalf without having such failure used against him, but upon the ground that the sworn statement had been procured from him by a representative of the Commonwealth under the guise of using it as evidence against unknown perpetrators of a crime. The court regarded that the affidavit was procured under

such circumstances that it should not be used against the defendant, because the circumstances of its obtention made the statements therein unreliable, and of an inquisitorial character. The rule applied to Tines' case is stated by Wharton's Criminal Evidence, sec. 668, as follows: "The testimony of an accused party, taken as such, is not admissible when such accused party is put on his oath and sworn and examined. The rule is founded upon the unreliable, as well as the inquisitorial, character of such statements; and therefore when a man, having been arrested by a constable without warrant, upon suspicion of having committed murder, was examined as a witness at the coroner's inquest, it was held that the statements thus made by him were not admissible against him on his trial for the murder. The same rule obtains where the defendant is compelled to answer under oath questions by the committing magistrate." The rule thus announced does not apply to a case where a defendant is on trial and voluntarily testifies for himself. The court so held in Smith v. Commonwealth, 26 S. W., 1100, 16 Ky. Law Rep., 169.

The court has failed to find any error in the record which prejudiced the appellant's substantial rights. It seems to the court that both the court and Commonwealth's attorney showed more than usual care to avoid committing any error to his prejudice. He has had a fair trial, and the judgment must be affirmed.

Petition for rehearing by appellant overruled.