Appellant was convicted under § 13A-5-31 (a)(2), Code 1975, for robbery or attempts thereof during which the victim was intentionally caused by the appellant to be killed. The jury returned a verdict of guilty of the capital offense charged in the indictment. After a hearing on aggravating circumstances, the jury returned a verdict fixing the appellant's sentence at death. Subsequently, *Page 1132 
the trial court weighed the aggravating and mitigating circumstances pursuant to § 13A-5-33, Code 1975, and sentenced the appellant to life without parole.
The sufficiency of the evidence not having been raised, we detail only those facts necessary to the resolution of the issues on appeal.
The bodies of the victims Myra Faye Tucker and her husband were discovered on an old mining road in Jefferson County, Alabama, on January 17, 1981. Both of them had received fatal wounds from shotgun blasts. Found inside the blouse of Mrs. Tucker was a crumpled telephone bill bearing the name "Godbolt." Although the temperature was only 34° F., Mrs. Tucker was without shoes when found. Three spent shotgun shells were also found at the scene.
The appellant's victim, under the indictment charging violation of § 13A-5-31 (a)(2), was Mrs. Tucker; she was robbed as well as killed. The autopsy on Mrs. Tucker indicated the shotgun muzzle had been forty-eight inches or closer to her when the shot was fired. Mrs. Tucker received injuries to her chest, hip, and neck. As well, further examination indicated the presence of sperm in Mrs. Tucker's vagina, rectum, and oral cavity.
The autopsy of Mr. Tucker indicated he had received a fatal shotgun wound in the back, as well as blunt trauma injuries to the head.
A shotgun found in the front yard of the home of appellant's parents on January 23, 1981, was tested and proved to be the same weapon which fired the shells found at the scene of the murders.
The known fingerprints of appellant were compared with a latent print lifted from the trunk of the Tucker automobile. The test revealed that the prints were identical.
Appellant was arrested on January 21, 1981. After again having been read his Miranda rights on January 23, 1981, appellant waived his rights and made a taped statement. Appellant stated that on Friday night, January 16, 1981, he had placed his shotgun, along with three shotgun shells, in Wayne Agee's automobile. Sometime later that night, appellant left a party he had attended, leaving with Wayne Agee. Along with appellant and Agee was one Carnell "Boo" Jackson.
The three black men were riding in Agee's automobile when they discovered they were low on both gasoline and money. At Boo's suggestion, the three men took out appellant's shotgun and lay in wait outside a bar as a means of obtaining money.
Appellant stated that when Mr. and Mrs. Tucker left the bar to go to their automobile, Boo pointed the white couple out and told appellant to go ask them for a pair of jumper cables. As appellant asked for the cables, Boo approached with the shotgun. Boo got in on the passenger side, where Mrs. Tucker was sitting, and got into the back seat. Mr. Tucker was placed in the back seat and appellant got into the driver's seat. Wayne Agee remained in his vehicle, and appellant followed him in the Tuckers' automobile.
Appellant stated that when he initially approached the couple, it was his plan, and the plan of his two companions, to kidnap the couple and take their vehicle.
After driving for a while, they took $10.00 from Mrs. Tucker and gave it to Agee for gasoline. They later placed Mr. Tucker in the trunk of his own automobile and took Mrs. Tucker into appellant's apartment. At this point, appellant had given the shotgun shells to Boo, who had then loaded the shotgun.
Upon entering the apartment, Mrs. Tucker asked to use the bathroom. Appellant entered the bathroom with her and forced her to perform fellatio on him. After being allowed to drink some water, Mrs. Tucker was taken into the bedroom by Boo, who removed her clothes and had sex with her. Appellant went outside to watch the automobile, and Agee went inside and joined Boo in the bedroom. After the two men "finished," Boo came out, opened the trunk, and took Mr. Tucker's rings and wallet. *Page 1133 
When Boo returned to the apartment, Agee and Mrs. Tucker had redressed. Although it was cold winter weather, Boo refused to let Mrs. Tucker put her shoes back on because "he was going to give them to his lady."
They all returned to the two vehicles and drove, at Boo's directions, to the old mine road. The following then occurred, as related by appellant in his taped statement:
 "All right then after he throwed the tire out and the man — he say you still not gone tell me, then he throwed him against the car, then throwed him down on the ground — by the — Boo had the shotgun in his hand. He gave me the shotgun. All right so when he knocked the man against the car and then dropped him on the ground and that time he gave me the shotgun, I kind of had the shotgun, I thought it was on safety and it — it went off right by Boo and Boo said, you hit me like that, he said you done shot me, then he said no, I don't know, he said it just burned me, he said something hit me under my chin. All right. So Boo said you still not gone tell me, the man laying on the ground, said you done hurt me like that. Wayne — all right Wayne had ah, got out of his car, so Boo told him to get back in his car. He was up a little ways, so Wayne sit in the car, so Wayne didn't actually see the shooting take place. So Wayne sat in his car, up a little ways from us in front of the Cutlass. All right. So ah, after then Boo say you still not gone tell me, he said give me the shotgun. I gave him the shotgun. He shot the lady then she — she hollered, then she fell, then her husband jumped and ran, he was running so fast, he tripped over his self and he fell then Boo — I'm still standing in the same place I shot the shotgun `cause I had hurt my hand with it and Boo went over there and shot him and he say let's go. All right. We get back in the Cutlass, close the trunk, get back in and I drives out. . . ."
The following morning, the men took the Tuckers' automobile to a spot behind a local high school, stripped it of its tires, and then set it on fire.
At the time this incident took place, appellant was 21 years old, Carnell "Boo" Jackson was 17, and Wayne Agee was 19.
Sergeant J.E. Gay testified that Jackson admitted actually firing the fatal shots. However, Jackson told him it was the older appellant who masterminded the plan.
Appellant testified at trial and altered his statement to say the Tuckers had attempted to sell them marijuana after they had accosted the couple. Also, he stated he was attempting to unload the shotgun when it went off accidentally. He stated Mrs. Tucker was friendly the whole time, and had stated she "liked the black men, she had had sex with them before." As well, he stated the Tuckers went with them "voluntarily" after they "saw the gun."
On rebuttal, State's witness Officer Greg Bearden testified that no traces of marijuana were found in the Tuckers' automobile after a thorough search of the same.
 I
Appellant contends that the statute under which he was indicted is unconstitutional, and that the Alabama Supreme Court, by severance, created a new death penalty law in violation of both the Alabama and United States constitutions.
This issue has been decided adversely to appellant in numerous cases and need not be readdressed herein. Magwood v.State, 426 So.2d 918 (Ala.Cr.App. 1982); Potts v. State,426 So.2d 886 (Ala.Cr.App. 1982); Clisby v. State, [Ms. 6 Div. 576, March 2, 1982] (Ala.Cr.App. 1982).
 II
Appellant contends the trial court's refusal to give his requested charge on robbery as a separate lesser included offense was reversible error. The trial court, in refusing to so charge, pointed out that the robbery and murder were all part of one criminal transaction without any significant intervening time. *Page 1134 
A charge on a lesser, non-capital offense is required only when there is a basis in the evidence which provides a reasonable theory supportive of the charge. Beck v. State,396 So.2d 645 (Ala. 1980).
We have carefully reviewed the evidence presented below and are convinced that there is no basis in the evidence to support a reasonable theory of the existence of the crime of robbery independent of the crime of murder. Appellant supplied the murder weapon and bullets, drove the abducted victims' vehicle, supplied his apartment for Mrs. Tucker's sexual abuse, fired the first shot at the scene of the murder, and handed the weapon to Jackson before he shot and fatally wounded the victims. Appellant, in his own taped statement, admitted he knew of the plan to abduct the Tuckers before he approached them in the parking lot.
The least offense supported by the evidence would have been that of felony murder, and the judge charged the jury under that theory. We find that there was simply no reasonable basis under the evidence for giving appellant's requested charge on robbery.
 III
Appellant argues it was error, violative of the Eighth and Fourteenth Amendments, to apply the capital murder statute to the non-triggerman in a murder-robbery. He cites as authorityEnmund v. Florida, ___ U.S. ___, 102 S.Ct. 3368,73 L.Ed.2d 1140 (1982).
Enmund addresses a question not presently before this court, that being "whether death is a valid penalty under the Eighth and Fourteenth Amendments `for one who neither took life, attempted to take life, nor intended to take life.'" (Emphasis added.) The appellant in the instant case is not before this court under sentence of death, but of life imprisonment without parole. Enmund did not hold that a capital felony conviction of life without parole was violative of constitutional standards.
There is no need to address the legal issue under Enmund as raised by appellant on appeal under the facts of the instant case.
Additionally, our review indicates that the evidence addressed at trial was sufficient to support a jury finding that appellant possessed the necessary particularized intent to kill, although he did not fire the fatal shots himself. Rainesv. State, 429 So.2d 1104 (Ala.Cr.App. 1982).
 IV
Multiple photographs of the bodies of both Mr. and Mrs. Tucker were introduced at trial over appellant's objection. Appellant contends the only purpose for the introduction of the photographs was to impermissibly prejudice the jury against appellant. Appellant argues the alleged prejudice was aggravated by allowing a pathologist to describe in detail the wounds of the victim's husband, Terry Tucker.
The witness upon whose testimony the introduction of the photographs was based testified the pictures accurately represented the scene and bodies of the Tuckers as he had observed them. The photographs were admissible as tending to prove a material issue, illustrate a relevant fact, and corroborate other evidence offered at trial. Carpenter v.State, 400 So.2d 417 (Ala.Cr.App.), cert. denied, 400 So.2d 427
(Ala. 1981). The fact that a photograph is gruesome and ghastly is no reason for excluding relevant evidence, even if the jury may be inflamed by its introduction. Carpenter, supra.
Myra Faye and Terry Tucker's deaths were the result of one continuous transaction, consisting of several inextricably intertwined acts. Evidence of Mr. Tucker's death was properly admissible as part of the res gestae and as shedding light on the acts, motive, and intent of appellant. Suggs v. State,403 So.2d 303 (Ala.Cr.App.), cert. denied, 403 So.2d 309 (Ala. 1981), cert. denied, 455 U.S. 1428, 102 S.Ct. 1428,71 L.Ed.2d 648 (1982). *Page 1135 
Photographs which show a victim's wounds are admissible in corroboration of the testimony of a pathologist who describes and details such wounds. The trial court did not abuse its discretion in admitting the photographs to which appellant objected. Carpenter, supra.
No error harmful to the substantial rights of appellant having been demonstrated on appeal, this case is affirmed.
AFFIRMED.
All the Judges concur.