Jerry Steven Godbolt was indicted by a Jefferson County Grand Jury on two counts of first degree murder during a robbery, both capital offenses, the victims being Myra Faye Tucker and Wayne Tucker. The trial jury found him guilty as charged of the capital murder of Myra Faye Tucker, and recommended the death sentence. The court sentenced him to life imprisonment without parole. His conviction was affirmed on appeal. Godbolt v.State, 429 So.2d 1131 (Ala.Cr.App. 1982).
In a separate trial the jury found Godbolt guilty as charged of the capital murder of Wayne Tucker and recommended a sentence of death. Pursuant to such recommendation, the trial judge sentenced the appellant to death. From this conviction and sentence, Godbolt now appeals.
Our recitation of the facts will be brief, because the acts of the appellant and his accomplices have been fully presented in our other opinions. See Godbolt v. State, 429 So.2d 1131
(Ala.Cr.App. 1982); Agee v. State, 465 So.2d 1196 (Ala.Cr.App. 1984); Jackson v. State, 516 So.2d 726 (Ala.Cr.App. 1985). The appellant and his two friends, Carnell Jackson and Wayne Agee, abducted Mr. and Mrs. Tucker, using as a weapon a shotgun, locked Mr. Tucker in the trunk of the Tuckers' car, stole the car and later "stripped" it, raped and sodomized Mrs. Tucker, and then fatally shot *Page 984 
both Mr. and Mrs. Tucker. Mrs. Tucker knew the appellant's name and had managed to stuff inside her blouse a telephone bill on which was written "Godbolt." The appellant's fingerprints were found on the Tuckers' automobile. For additional facts, see, as an attached appendix, the trial court's finding of facts.
 I
Applying the principles of double jeopardy and collateral estoppel, appellant Godbolt initially argues that because his trial for the capital murder of Mrs. Tucker resulted in a sentence of life imprisonment without parole, the State should be precluded from seeking and obtaining the death penalty for the capital murder of Mr. Tucker. He relies on Ashe v. Swenson,397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), andBullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852,68 L.Ed.2d 270 (1981). Although this issue has not been addressed in this State, the Mississippi Supreme Court has ruled on this exact issue. In Wheat v. State, 420 So.2d 229 (Miss. 1982), cert. denied, 460 U.S. 1056, 103 S.Ct. 1507, 75 L.Ed.2d 936
(1983), the appellant abducted a married couple, stole their car, and then fatally shot the couple. At his trial for the capital murder of the wife, the jury could not agree on a sentencing recommendation, so he was sentenced by the court to life without parole. Thereafter, he was convicted for the capital murder of the husband and sentenced to death. On his appeal, he also relied on Ashe and Bullington. The Mississippi Supreme Court dismissed his argument:
 "These cases easily are distinguishable from the case sub judice. In Ashe, we have masked men breaking up a poker game by robbing each individual player. Ashe was indicted for robbery of each person. On his first trial the jury found him not guilty. The issue in the case was a question of 'identity,' as to whether Ashe was one of the robbers. The first jury found he was not. The Supreme Court held that the rule of collateral estoppel applied and the prosecution should not be allowed to have another jury pass on this question. In the case at bar, we have an entirely different situation — there were two murders. Appellant was tried and convicted of capital murder. The only difference between the two trials was that the jury in the first failed to agree on punishment. The case sub judice was a trial for a separate and distinct murder, for which he had not received a prior acquittal. In the penalty phase of the trials there was no question of identity as the Supreme Court had in Ashe, supra.
 "In Bullington, supra, there had been a prior trial and an acquittal of the accused, which as shown above was entirely different from the facts presented in the present case. We find no merit in this assignment."
Wheat v. State, 420 So.2d at 240. We agree and hold that the State was not precluded from seeking the death penalty for the murder of Mr. Tucker simply because the appellant had been previously sentenced to life without parole for the murder of Mrs. Tucker.
 II
The appellant contends that the trial court erred in allowing into evidence much testimony about the inhuman treatment meted out to Mrs. Tucker. Since the appellant was being tried for the capital murder of Mr. Tucker, he argues, testimony regarding Mrs. Tucker was irrelevant. The appellant raised the converse of this issue on his appeal of the conviction for the murder of Mrs. Tucker. What we said then aptly applies now:
 "Myra Faye and Terry Tucker's deaths were the result of one continuous transaction, consisting of several inextricably intertwined acts. Evidence of Mr. Tucker's death was properly admissible as part of the res gestae and as shedding light on the acts, motive, and intent of appellant. Suggs v. State, 403 So.2d 303 (Ala.Cr.App.), cert. denied, 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982)."
Godbolt v. State, 429 So.2d at 1134. The testimony regarding Mrs. Tucker was properly admitted into evidence. *Page 985 
 III
Appellant next claims that reversible error occurred when the trial court allowed the State to read to the jury, during its case in chief, his testimony from the earlier trial, the trial for the capital murder of Mrs. Tucker. The trial judge based his ruling on Willingham v. State, 50 Ala. App. 363,279 So.2d 534, cert. denied, 291 Ala. 803, 279 So.2d 538 (1973).
The testimony was essentially a recapitulation of his confessions, which the jury had already heard. The only differences were that in his oral testimony, he claimed that the Tuckers were not forced to do anything; that they voluntarily accompanied the appellant and his two associates, and, furthermore, that Mrs. Tucker had seduced them. The oral testimony related the same facts as did his confessions, namely that "Boo" Jackson had the shotgun when they approached the Tuckers; that Mrs. Tucker was forced to give them money; that Mr. Tucker was placed into the trunk of his car and his wallet and rings were taken; that Mrs. Tucker had sexual intercourse and deviate sexual intercourse with them; and that the Tuckers were intentionally killed. We do not believe that the admission of what is essentially cumulative evidence can form a basis for reversible error, if it is error at all. The evidence is overwhelming, and it places appellant's guilt beyond a reasonable doubt. The above related testimony did not affect the outcome of the case. The harmless error doctrine also applies. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431,89 L.Ed.2d 674 (1986); Harrington v. California, 395 U.S. 250,89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Harryman v. Estelle,616 F.2d 870 (5th Cir.) (en banc), cert. denied, 449 U.S. 860,101 S.Ct. 161, 66 L.Ed.2d 76 (1980); Neelley v. State,494 So.2d 669 (Ala.Cr.App. 1985) (pending on certiorari).
 IV
Appellant next argues that the court reporter failed to include in the official transcript the closing arguments of the attorneys, and that this failure requires a reversal. "The official court reporter . . . shall take full stenographic notes of the oral testimony and proceedings, except argument ofcounsel. . . ." § 12-17-276, Code of Alabama 1975. The court reporter is under no duty to record closing arguments. Langfordv. State, 354 So.2d 297 (Ala.Cr.App. 1977), rev'd on other grounds, 354 So.2d 313 (Ala. 1978); McFerrin v. State,339 So.2d 127 (Ala.Cr.App. 1976); Zuck v. State, 57 Ala. App. 15,325 So.2d 531 (1975), cert. denied, 295 Ala. 430, 325 So.2d 539
(1976); except when there is an objection. Ervin v. State,399 So.2d 894 (Ala.Cr.App.), cert. denied, 399 So.2d 899 (Ala. 1981); McFerrin v. State, supra. No error occurred in this respect.
 V
Last, the appellant claims the trial judge erred by applying the Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770,20 L.Ed.2d 776 (1968), standard during jury selection instead of the standard as pronounced in Wainwright v. Witt, 469 U.S. 412,105 S.Ct. 844, 83 L.Ed.2d 841 (1985). The Witt decision was issued on January 21, 1985, and the trial of this case occurred on October 24, 1983. The Witt decision reaffirmed the Court's updated standard first announced in Adams v. Texas,448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).
We recognized this standard in our opinion concerning the appeal of the appellant's accomplice, Carnell Jackson:
 "As recently stated by the United States Supreme Court in Wainwright v. Witt, [469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)] 53 U.S.L.W. 4108, 4110 (1985) (quoting Adams v. Texas, 448 U.S. 38, 45 [100 S.Ct. 2521, 2526, 65 L.Ed.2d 581] (1980):
 " 'This line of cases establishes the general proposition that a juror may not be challenged for cause based on his views about capital punishment unless those views would present or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. The State may insist, however, that *Page 986 
jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court.' (Emphasis added in Adams.)
 "In holding that the standards announced in Adams rather than the standards of Witherspoon v. Illinois, 391 U.S. 510 [89 S.Ct. 1770, 20 L.Ed.2d 776] (1968), should be applied to scrutinize the dismissal for cause of jurors who express opposition to the death penalty, the Court stated that 'this standard likewise does not require that a juror's bias be proved with "unmistakable clarity." ' Witt, [469 U.S. at 424, 105 S.Ct. at 852]."
Jackson v. State, 516 So.2d 726 (Ala.Cr.App. 1985) (pending on certiorari). As the Court stated, "In general, the standard has been simplified." Witt, 469 U.S. at 423, 105 S.Ct. at 851.
The appellant fails to show how he was prejudiced by the trial judge's using Witherspoon instead of Adams or Witt. No erroneous action is demonstrated. Our review of the transcript also fails to uncover any prejudice. Our review persuades us that the result in this case is consistent with that inLockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758,90 L.Ed.2d 137 (1986).
 VI
As required by § 13A-5-53(a), Code of Alabama 1975, this court now reviews the propriety of the imposition of the death penalty in this case. Our review must include a determination of the following questions:
 (1) Was any error adversely affecting the rights of the defendant made in the sentence proceedings?
 (2) Were the trial court's findings concerning the aggravating and mitigating circumstances supported by the evidence?
 (3) Was the death penalty the proper sentence in this case?
As to the first question, we have reviewed the sentence proceedings and have found no error adversely affecting the appellant's rights. As to the second question, we have reviewed the record and we are satisfied that the trial court's written findings concerning the aggravating and mitigating circumstances are fully supported by the evidence. See the appendix attached.
To answer the third question of whether the death penalty was properly imposed in this case, we must determine:
 (1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
 (2) Whether an independent weighing of the aggravating and mitigating circumstances at the appellate level indicates that death was the proper sentence; and
 (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Alabama Code (1975) § 13A-5-53(b). See also, Beck v. State,396 So.2d 645 (Ala. 1981).
There is nothing in the record before us which even intimates that the death penalty was imposed under the influence of passion, prejudice, or any other arbitrary factor.
Our independent weighing of the aggravating and mitigating circumstances leaves us with no doubt that the death penalty is appropriate in this case; we agree with the trial judge that the aggravating circumstances outweigh the mitigating circumstances. The court found as mitigating circumstances that the appellant had no significant history of prior criminal activity and that he was twenty-one years of age at the time of the crime, although, as the court stated: "The defendant was [older than] his two companions who acted in concert in the commission of this offense. . . ." The court found that no other mitigating circumstances existed, either statutory or non-statutory. As aggravating circumstances, the court found: 1) that the capital offense occurred during a robbery; 2) that the defendant had been previously convicted of another capital felony; and 3) that the offense was especially heinous, atrocious or cruel. Kyzer v. State, 399 So.2d 317 (Ala.Cr.App. 1979), rev'd on other grounds, 399 So.2d 330 (Ala. 1981). *Page 987 
In regard to the final determination this court must make, we find that the death penalty imposed on the defendant is not excessive or disproportionate to the penalty imposed in similar cases. See, e.g., Thomas v. State, 460 So.2d 207 (Ala.Cr.App. 1983), aff'd, 460 So.2d 216 (Ala. 1984); Jones v. State,456 So.2d 366 (Ala.Cr.App. 1983), aff'd, 456 So.2d 380 (Ala.), cert. denied, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838
(1984); Weeks v. State, 456 So.2d 395 (Ala.Cr.App. 1984), aff'd, 456 So.2d 404 (Ala. 1984); Jones v. State, 450 So.2d 165
(Ala.Cr.App. 1983), aff'd, 450 So.2d 171 (Ala. 1984), cert. denied, 469 U.S. 873, 105 S.Ct. 232, 83 L.Ed.2d 160 (1984);Wommack v. State, 435 So.2d 754 (Ala.Cr.App.), aff'd,435 So.2d 766 (Ala. 1983); Bush v. State, 431 So.2d 555 (Ala.Cr.App. 1982), aff'd, 431 So.2d 563 (Ala.), cert. denied, 464 U.S. 865,104 S.Ct. 200, 78 L.Ed.2d 175 (1983).
We have searched the record, as required by Rule 45A, A.R.A.P., and have found no error which adversely affected the rights of the appellant. The sentence of death was proper in this case. Therefore, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
 "APPENDIX" STATE OF ALABAMA vs. JERRY STEVEN GODBOLT CASE NO. CC81-0886 IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT OF ALABAMA ORDER OF COURT ON IMPOSITION OF DEATH PENALTY
The defendant in this case, Jerry Steven Godbolt, was charged by indictment of the grand jury of the Circuit Court of the Tenth Judicial Circuit of Alabama, in and for Jefferson County, Alabama, with the capital offense of Robbery, when the victim, Terry Wayne Tucker, was intentionally killed by the defendant. This charge was brought under provisions of the Alabama Death Penalty Statute, under Title 13A, Section 5-31(a)(2) [13A-5-31(a)(2)].
This case came on to be heard before the Court and a jury of twelve men and women duly impaneled and sworn as required by law; whereupon the jury, after hearing the evidence, the Court's charge as to the applicable law, including the lesser included offenses of Murder and Robbery, and upon consideration of the law and evidence, found the defendant guilty of the capital offense as charged in the indictment. The jury was polled and the verdict was unanimous in finding said defendant guilty of the capital offense and not of the lesser included offenses of Murder and Robbery. The verdict was returned by the jury on October 28, 1983, and was announced by the Court on said date. Subsequent to the jury finding the defendant guilty of the capital offense, and on the same day of October 28, 1983, the Court commenced a sentence hearing before the said jury, as required by the Supreme Court of Alabama in Beck v.State, 396 So.2d 645. After opening statements by the attorneys, the presentation of evidence during this punishment phase of these proceedings and summation by the attorneys, the Court again charged the jury as to the applicable law, advising said jury that after hearing evidence concerning aggravating circumstances and mitigating circumstances, that the jury would fix punishment according to law. The Court further charged the jury that if the mitigating circumstances outweighed the aggravating circumstances, then the punishment would be fixed at life imprisonment without eligibility for parole, but if the aggravating circumstances outweigh the mitigating circumstances, then the punishment would be at death. After due deliberation, the jury returned a verdict fixing the defendant's punishment at death. The jury was individually polled and the verdict was unanimous.
The Court, in its charge to the jury as to how the mitigating circumstances and aggravating circumstances would be considered in affixing punishment during the *Page 988 
punishment phase, advised the jury that emotion, passion, prejudice or other arbitrary factors should not be considered in arriving at punishment in the verdict. The Court further charged the jury that their deliberations and verdict should be based on the law and the evidence, as they had heard during the course of the trial. The Court is satisfied and makes the finding that the element of passion, prejudice, or other arbitrary factors were not present in the jury's deliberations in fixing punishment at death. After the jury returned said verdict, the Court then announced the jury verdict and set the sentencing date for January 27, 1984 at 1:30 P.M. The Court further instructed both attorneys for the state and for the defendant to file briefs as to the legal issues involving matters which had been raised as to the issues of collateral estoppel as to whether the Court had the authority to affix punishment at death, if so recommended by the jury. At said prior hearing the defendant, his trial counsel, the Honorable James Jolly and Honorable Ronda Lacey, and the district attorney and deputy district attorneys were present and ready to proceed.
 FINDING OF FACT FROM THE TRIAL
After said hearing, the Court makes the following findings of fact from the trial:
The bodies of the victims, Terry Wayne Tucker and his wife Myra Faye Tucker, were discovered on an old mining road in Jefferson County, Alabama on January 17, 1981. Both of them had received fatal wounds from a shotgun blast. Found inside the blouse of Mrs. Tucker was a crumpled telephone bill bearing the name Godbolt. Three spent shotgun shells were also found at the scene where the bodies were located.
The autopsy on Mr. Tucker revealed that he died as the result of a shotgun wound to the back and further testimony indicated that the shotgun muzzle was between two to four feet in distance from the victim when the shot was fired. It was further brought out in testimony that Mr. Tucker also had abrasions on his neck and scalp with a blunt force injury to the back of his head.
A shotgun found in the front yard of the home of the defendant's parents on January 23, 1981 was tested and proven to be the same weapon which fired the shells found at the scene of the murder.
Latent prints were lifted from the trunk of the Tucker's automobile, found at a different location and said latent prints were later compared with the known prints of the defendant and proven to be identical. The defendant was arrested on January 21, 1981. After again having been read his Miranda rights on January 23, 1981, the defendant waived his rights and made a taped statement. The defendant stated that on Friday night January 16, 1981, he had placed his shotgun along with three shells in Wayne Agee's automobile. Sometime later that night the defendant left a party he had attended, leaving with Wayne Agee. Along with the appellate and Agee was one Carnell "Boo" Jackson. The three black men were riding in Agee's automobile when they discovered they were low on both gasoline and money. At Boo's suggestion the three men took out the defendant's shotgun and lay in wait outside the bar as a means of obtaining money.
The defendant stated that when Mr. and Mrs. Tucker left the bar to go to their automobile, Boo pointed the white couple out and told the defendant to ask them for a pair of jumper cables. As the defendant asked for the cables, Boo approached with the shotgun. Boo got in on the passenger side where Mrs. Tucker was sitting and got into the back seat. Mr. Tucker was placed in the back seat and the defendant got into the driver's seat. Wayne Agee remained in his vehicle and the defendant followed him in the Tucker's automobile.
The defendant stated that when he initially approached the couple it was his plan and the plan of the two companions to kidnap the couple and take their vehicle. After driving for a while, they took $10.00 from Mrs. Tucker and gave it to Agee for gasoline. They later placed Mr. Tucker in the trunk of his own automobile and took Mrs. Tucker into the defendant's apartment. *Page 989 
At this point the defendant gave the shotgun shells to Boo who had then loaded the shotgun.
Upon entering the apartment, Mrs. Tucker asked to use the bathroom. The defendant entered the bathroom with her and forced her to perform fellatio on him. After being allowed to drink some water, Mrs. Tucker was taken into the bedroom by Boo who removed her clothes and had sex with her. The defendant went outside to watch the automobile and Agee went inside and joined Boo in the bedroom. After the two men finished, Boo came out, opened the trunk, and took Mr. Tucker's rings and wallet.
When Boo returned to the apartment, Agee and Mrs. Tucker had redressed. They all returned to the two vehicles and drove at Boo's directions to the old mine road. The following then occurred as related by the defendant in his taped statement.
 "All right then after he throwed the tire out and the man — he say you still not gone tell me, then he throwed him against the car, then throwed him down on the ground — by the — Boo had the shotgun in his hand. He gave me the shotgun. All right so when he knocked the man against the car and then dropped him on the ground and that time he gave me the shotgun, I kind of had the shotgun, I thought it was on safety and it — it went off right by Boo and Boo said, you hit me like that, he said you done shot me, then he said no, I don't know, he said it just burned me, he said something hit me under my chin. All right. So Boo said you still not gone tell me, the man laying on the ground, said you done hurt me like that. Wayne — all right Wayne had ah, got out of his car, so Boo told him to get back in his car. He was up a little ways, so Wayne sit in the car, so Wayne didn't actually see the shooting take place. So Wayne sat in his car, up a little ways from us in front of the Cutlass. All right. So ah, after then Boo say you still not gone tell me, he said give me the shotgun. I gave him the shotgun. He shot the lady then she — she hollered, then she fell, then her husband jumped and ran, he was running so fast, he tripped over his self and he fell then Boo — I'm still standing in the same place I shot the shotgun 'cause I had hurt my hand with it and Boo went over there and shot him and he say let's go. All right. We get back in the Cutlass, close the trunk, get back in and I drives out. . . ."
The following morning, the men took the Tuckers' automobile to a spot behind a local high school, stripped it of its tires, and then set it on fire.
At the time this incident took place, the defendant was 21 years old, Carnell "Boo" Jackson was 17, and Wayne Agee was 19.
Sgt. James E. Gay testified that Jackson admitted actually firing the fatal shots. However, Jackson told him that it was the older defendant, Godbolt, who masterminded the plan.
 FINDINGS OF FACT FROM THE PUNISHMENT HEARING
At the punishment phase of this trial before the jury, the state requested and it was granted that the evidence introduced in the trial in chief be incorporated into the punishment phase before the jury. The state further offered evidence through the Office of the Circuit Clerk in Jefferson County, that on the 25th day of February, 1982, that the defendant was convicted of the capital offense involving the death of Myra Faye Tucker, Mr. Terry Wayne Tucker's wife. The defendant presented testimony through his mother that he had lived in her home all but about six months of his life and that as a child and, further, his growing up as an adult that she had had no behavioral problems with him.
At the conclusion of said hearing and summation of the attorneys, the Court again charged the jury as to the applicable law. The Court enumerated the aggravating circumstances to be the component portions of the capital offense itself, that being the robbery and the intentional killing of the victim, Terry Wayne Tucker. The Court further charged on the additional aggravating circumstances as enumerated in Title 13A-5-35, those being 13A-5-35(2) *Page 990 
that the defendant was previously convicted of another capital felony and (8) the capital felony was especially heinous, atrocious or cruel. The Court in its charge charged the jury on all statutory mitigating circumstances as set out in Title 13A-5-36 and informed the jury that they were not bound by only the statutory mitigating circumstances but may consider any other circumstances and mitigation.
The Court further charged the jury that in determining the punishment the jury must avoid any influence of passion, prejudice or any other arbitrary factor. Further, that the burden on the state to prove the aggravating circumstances was beyond a reasonable doubt and to a moral certainty. However, the mitigating circumstances need only be proven to their reasonable satisfaction. The Court further charged the jury that it is not the numerical number of aggravating circumstances as opposed to the number of mitigating circumstances, or the number of mitigating circumstances as opposed to the aggravating circumstances, but the seriousness of the gravity of the aggravating circumstances and the mitigating circumstances, as shown by the mitigating circumstances, proven to the juror's reasonable satisfaction.
The jurors, after due deliberation and the Court makes the following finding, that in fixing punishment, the jurors were not influenced by passion, prejudice, or any other arbitrary factors, said punishment was fixed at death.
 FINDINGS OF FACTS FROM THE SENTENCE HEARING BY THE COURT
On this, the 27th day of January, 1984, the defendant, Jerry Steven Godbolt, coming into open court with his counsel, the Honorable James Jolly and the district attorney, Honorable John DeCarlo, and deputy district attorney, Honorable Russell McDonald, on motion by said deputy district attorney, the evidence off red in the trial in chief which was heard by the jury in the guilt phase of the proceedings and the evidence presented in the punishment phase of this proceedings before the jury were incorporated in this hearing to be considered by the Court in affixing punishment. The Court is mindful of the evidence that has been previously introduced as set out hereinabove. The Court finds the following mitigating circumstances to exist:
The age of the defendant at the time the commission of the crime being twenty-one years of age. However, the Court is further mindful that at the commission of the crime the defendant was the older of his two companions who acted in concert in the commission of this offense, the other two companions being Carnell "Boo" Jackson being 17 years of age and Wayne Agee being 19 years of age. The Court further found that the defendant had no significant history of prior criminal activity.
The Court makes the further following findings: that there were no other mitigating circumstances, either statutory or non statutory, existing or as shown by the evidence that the capital felony was not committed while the defendant was under the influence of extreme mental or emotional disturbance, as determined by the evidence. Further, that the victim was not a participant in the defendant's conduct, and further, that the defendant and an accomplice or accomplices committed the felony and the defendant's participation in the offense was of major participation as the defendant supplied the murder weapon and the shells, drove the abducted victims' vehicle, fired the first shot at the scene of the murder and handed the weapon to Jackson before Jackson fired the fatal shot into the victim. The appellant further, in his own statement, admitted that he knew of the plan to abduct the Tuckers before he approached them in the parking lot. Further, the defendant was not acting under extreme duress or under substantial domination of another party and further, that the capacity of the defendant to appreciate the criminality of his conduct was not impaired.
The Court makes the following findings of fact: that the aggravating circumstances listed below did, in fact, exist:
The component of robbery did occur on the victim, Terry Wayne Tucker; that the victim, Terry Wayne Tucker, was intentionally *Page 991 
killed by the defendant; that the defendant has been previously convicted of another capital felony and that this capital felony was especially heinous, atrocious or cruel as the victim was abducted, ultimately placed in the trunk of his automobile where he was transported a significant distance in extremely cold weather. He was in constant fear of his life prior to the actual killing. He was struck about the head wherein he sustained a significant trauma and injury to the back of his head. He witnessed the killing of his wife immediately prior to his demise. The Court finds that this combination of factors sets this capital felony apart from other intentional killings and would categorize it under these circumstances as especially heinous, atrocious and cruel.
After consideration of all matters that were presented to the Court during this hearing both in mitigation and by aggravation, and taking into consideration all other matters that were profferred before the Court as here and above stated in this order, and disregarding pleas or reference to the Court to consider the sentence on basis of passion or prejudice, this Court does now find and is convinced beyond a reasonable doubt and to a moral certainty that the aggravated circumstances because of the gravity and seriousness of such circumstances above and brought out before this Court after the above mitigated circumstances and they are sufficient to uphold the jury's punishment at death.
It is therefore the judgment of this Court that the defendant should be sentenced to death. Ordered this the 27th day of January, 1984.
 /s/James S. Garrett James S. Garrett, Circuit Judge