LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant (appellant) guilty of theft in the second degree of property alleged in the indictment as “Three Men’s shirts of the aggregate value of Seventy Two Dollars, the property of Rich’s, Inc., (Ala.), a corporation, taken from or in a building where said property was stored or kept for sale.” The alleged theft of property in the second degree is covered by Alabama Criminal Code § 13A-8-4(e), which provides:
“The theft of property which exceeds $25.00 in value, and which is taken from or in a building where said property is sold or stored constitutes theft of property in the second degree.”
Three of the five issues presented by appellant pertain to the question of the sufficiency of the evidence to support the verdict. As to each of them, appellant states that it is “Raised, not argued.” Our review of the evidence convinces us that it is sufficient to support the verdict and that no reasonable argument can be made to the contrary. The only eyewitnesses who testified as to the incident that resulted in the arrest and prosecution of appellant were two retail security detectives of Rich’s, Deborah Tipton and Kenneth MacMahon. We quote from appellant’s brief as to a part of the testimony of Deborah Tipton:
“That she observed two black males in the Trend department both carrying Piz-itz bags. That one black male put three white Izod shirts into a Pizitz bag. That she called a second store detective by the name of Kenneth MacMahon on her walkie talkie. That she was approximately 100 to 125 feet when she first observed them. That they began walking around looking at merchandise and she continued to observe them for five, ten or fifteen minutes. That the Defendant *984 was one of the black males in the store on that occasion. That when Detective MacMahon arrived in the Men’s Department he was approximately fifteen to twenty feet away from the two black males. That Appellant put the shirts into the Pizitz bag which was held by the other black male, later identified as Willie Peak. That the two black males walked out of the store.... That the two black males were taken to the security office on the second floor. That they arrived in the office at approximately 3:10 and remained until the Birmingham Police arrived and the black males were turned over to them at approximately 4:20.... That after inspecting the sack they found three Izod shirts of the value of $72.00, two record albums from Music-land and an electric football game from Radio Shack.”
As to the testimony of Mr. Kenneth MacMahon, we quote from a part of appellant’s brief as follows:
“That in response to that call [the call from Ms. Tipton] he went to the Trend area where he observed two black males at a distance of approximately 100 feet. That he moved to within 15 feet and observed one black male holding a large shopping bag very close to the rack of slacks and the other took three white Izod shirts from the shelf and placed them in the bag being held open by the other black male. That he observed this almost immediately upon walking within close range of them. That the black males browsed around in the Trend Department and then went outside in the lower level mall where Detective Tipton stopped them. That he wrote a report regarding the incident.”
In one of the only two issues argued by appellant, he contends that the trial court “erred by refusing Appellant’s offer of a written report” made by witness Deborah Tipton. Appellant’s contention is based on what occurred during the cross-examination of Deborah Tipton. We quote from a pertinent part of the transcript as follows:
“Q. That your story today to this jury is subject No. 2 [Ernest Toles Robinson], which is him, who say is him (sic), and got the shirts and put them in the bag that subject No. 1 had, right?
“A. Yes, sir.
“Q. And subject No. 1, who was Willie Peak, left the store with the merchandise, and that’s who actually had the merchandise when you stopped him out there in the hallway, right?
“A. Yes, sir.
“MR. POLSON [Defendant’s attorney]: Judge, I want to have this ladies’ report marked for purpose of identification.
“THE COURT: Can we agree to a substituted copy?
“THE WITNESS: This is a Xerox copy.
“MR. POLSON: Judge, there is one page in it that I want to have — may I pull it apart?
“MR. ANTHONY [State’s attorney]: I think if we are going to introduce it we ought to introduce everything.
“MR. POLSON: I’m not going to introduce everything right now.
“MR. ANTHONY: We are not going to stipulate to anything.
“THE COURT: He isn’t asking you to stipulate to everything yet.
“MR. POLSON: Mark that, please, sir.
“(Defendant’s Exhibit 1 marked for identification.)
“THE COURT: How many pages are in the report?
“MR. ANTHONY: Four pages.
“MR. POLSON: No, there is five pages.
“Q. I want to show what has been marked as Defendant’s Exhibit 1 for identification.
“THE COURT: That’s page what?
“MR. POLSON: Judge, I don’t think it has any particular order. That was his second page in line when it was stapled together.”
It is not clear that anything else was said about “Defendant’s Exhibit 1” until after the State rested its case, when the following occurred:
*985 “THE COURT: State rests. Ladies and gentlemen, that means that the evidence on behalf of the State is over. You will now hear from the Defendant. It is my understanding that — well, I am right in saying this, that the Defendant is going to offer some testimony with reference to the conversation that was had with Ms. Tipton. It is on tape. It was taped during the conversation -with Ms. Tipton. That’s what he’s going to play.
“(Tape played.)
“MR. POLSON: The Defendant Exhibit 1 that was identified, I want to offer that. I know the Court has already ruled as far as primary consideration, but I did want that introduced into the record. We would do so at this time.
“MR. ANTHONY: We object to it.
“THE COURT: Let me see that thing.
“The State objects?
“MR. ANTHONY: Yes, sir.
“THE COURT: Sustained.
“MR. POLSON: I wanted that to go into the record.
“THE COURT: It is.”
Appellant argues in his brief as to the issue under consideration “that the report was admissible to show the contradiction between the witness’ own report and her testimony at trial on direct examination.”
Defendant’s Exhibit 1 is not included in the record of the proceedings, and this fact alone forbids our holding that the trial court committed error in sustaining the objection of the State to defendant’s effort to introduce it in evidence. In addition, we should note that our attention is not called to anything definite in defendant’s Exhibit 1 that is in conflict with any of the testimony of Ms. Tipton. We are convinced that the ruling of the court did not constitute error prejudicial to defendant.
The only other issue argued by appellant is thus stated in his brief:
“The Trial Court Erred by Refusing to Allow into Evidence Testimony that Appellant Refused to Sign the Store Detective’s ‘Confession.’ ”
Appellee captions its argument in response to appellant’s contention as follows:
“APPELLANT’S OUT-OF-COURT, SELFSERVING DECLARATION IS INADMISSIBLE UNLESS SHOWN TO FALL WITHIN AN EXCEPTION TO THE HEARSAY RULE.”
Both parties refer approvingly to Gamble, McElroy’s Alabama Evidence, § 242.02 (1977), which states:
“Many Alabama appellate court opinions state that evidence of a party’s extrajudicial declarations offered by him is inadmissible as being a ‘self-serving declaration.’ Such statements, however, are misleading in that they seem to imply that there is some sort of special rule against the reception of ‘self-serving declarations.’ Such an implication is erroneous because there is no rule of evidence that can be properly or accurately described as a rule against self-serving declarations. If a self-serving declaration is inadmissible as tending to prove the truth of the matter asserted, the inadmissibility results from the hearsay rule. If a self-serving declaration falls within an exception to the hearsay rule, such as a party’s declaration of present pain offered as tending to show that he suffered pain or an accused’s declaration of an innocent purpose of his journey made while he is setting out upon the journey, the declaration is admissible under the exception regardless of its self-serving quality.
“The harm that comes from using the term ‘self-serving declaration’ is that it tends to cause one to lose sight of the fact that a so-called self-serving declaration may be admissible under an exception to the hearsay rule or simply because it is relevant irrespective to the truth or falsity of the declaration.”
The ruling of the trial court forming the basis for the issue between the parties occurred during the cross-examination by defendant’s counsel of the witness Deborah Tipton, as did the only other issue argued by appellant, and to some extent is related to the other issue, but we will endeavor to treat it separately from the other issue, as *986 do the parties in their briefs, even though we have some difficulty in determining whether the document to which the issue now under consideration is referable is the same document referred to above as “defendant’s Exhibit 1.” We now quote that part of the transcript that is quoted in appellant’s brief that follows immediately that part of the cross-examination of the witness Deborah Tipton we have quoted in our discussion of the other issue argued by appellant:
“Q. Would you please look at that and identify that for the record, please, ma’am?
“A. Yes, sir. It’s the rights we read each suspect, with a waiver of rights where they sign if they like. Then we put the time, the date and the signature for the witnesses. Then we have a statement that we list the name, age, date, the location, the merchandise that has been placed in front of us here. Then we have them read it. If they want to sign it, they sign it. If they do not we mark it refused and we have a witness and they sign it.
“Q. This is a standard pre-printed written form and you probably have 50 or 100 of them waiting in your desk drawer for the thieves to sign, right?
“A. Suspects, yes, sir.
“Q. And what it says is — let me ask you this: Who’s handwriting is that?
“A. That’s mine.
“Q. Does it say,- T, Ernest Robinson, age 33, hereby state — ’ let me stop. Part of this is already printed. The small print, that’s what’s already there and then you come in and you fill in some blanks? “A. Yes, sir.
“Q. Does it say, ‘I, Ernest Robinson, age 33, hereby state that on the 24th of July, 1981, I stole from Rich’s Century Plaza, Jefferson County, Alabama, the following described property for which I did not pay nor intended to pay Rich’s: Three white Izod shirts, $24 each, total $72.’
“So what you’ve got here, you’ve got a pre-printed confession and all you’ve got to do is fill in the blanks, right, for these people to sign?
“A. Yes, sir.
“Q. And when you presented this to my client, to Mr. Robinson there, what did he say to you when you handed him his written confession?
“MR. ANTHONY: I’m going to object to being hearsay.
“THE COURT: I sustain it. Don’t answer.
“Q. All right. Let me ask you this: Did he refuse to sign this pre-printed written statement that you had prepared for him?
“MR. ANTHONY: We still object, Judge. It’s there to be offered into evidence.
“THE COURT: It’s inadmissible, ladies and gentlemen. What he just said is inadmissible in this case. I just instruct you to disregard it.
“MR. POLSON: Judge, we offer it for the record.
“THE COURT: Do you object?
“MR. ANTHONY: Yes.
“THE COURT: It’s out.”
It is to be noted from what we have quoted above from the transcript that, in making its objection to the offered evidence, State’s counsel did not use the expression “self-serving” or the like. This renders inapposite appellant’s discussion of “self-serving declarations” or the like. Furthermore, we note that as it appears that defendant was offering to show by the witness what defendant said to her when she “handed him his written confession,” and that the defendant refused “to sign this pre-printed written statement” that the witness had prepared for him, and that the proposed testimony was offered “as tending to prove the truth of the matter asserted” by defendant, the State’s objection to the offered testimony on the ground that it was hearsay was well taken, unless the proposed testimony falls within one of the exceptions to the hearsay rule. Gamble, McElroy’s Alabama Evidence, supra. We do not find, and appellant does not presently claim, that it constitutes an exception to the hearsay rule. His claim now is, as stated in his brief:
*987 “Appellant submits that the testimony was not offered to prove or disprove the theft but to show that the statement was made.”
In support thereof, appellant cites Gamble, McElroy’s Alabama Evidence, supra, quoted above, and Bryant v. Moss, 295 Ala. 339,329 So.2d 538 (1976), in which 329 So.2d at page 541 Justice Jones states:
“... A statement made out of court is not hearsay if it is given in evidence for the purpose merely of proving that the statement was made, provided that purpose be otherwise relevant in the case at trial. 5 Wigmore, Evidence, § 1361; 6, Id., § 1770 Motors Ins. Corp. v. Lopez, 217 Ark. 203, 229 S.W.2d 228 (1950). ...”
Appellant does not endeavor to show us any relevancy whatever of the proposed testimony “that the statement was made,” and we think it was irrelevant.
We find no contention by appellant that the offered testimony as to what the defendant said was a part of the res gestae. Assuming that what defendant said was exculpatory, it nevertheless would have been inadmissible.
As stated in Shadle v. State, 280 Ala. 379, 384, 194 So.2d 538, 542 (1967):
“... The rule is that the acts, declarations, and demeanor of an accused, before or after an offense, whether a part of the res gestae or not, are admissible against him, but, unless a part of the res gestae, are not admissible for him. Maddox v. State, 159 Ala. 53, 48 So. 689; Roberts v. State, 258 Ala. 534, 63 So.2d 584; Willingham v. State, 261 Ala. 454, 74 So.2d 241.”
We have considered all issues raised on appeal and find no error prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
DeCARLO, P.J., and TYSON, HARRIS and BOWEN, JJ., concur.