No. 89–6679.  SWINDLER *v.* LOCKHART, DIRECTOR, ARKANSAS DEPARTMENT OF CORRECTION.  C. A. 8th Cir.  Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

A defendant's interest in a fundamentally fair trial outweighs the State's interest in trying the defendant in a particular venue. See, *e. g., Lee* v. *Georgia,* 488 U. S. 879 (1988) (MARSHALL, J., dissenting from denial of certiorari).  Accordingly, state laws that restrict a court's ability to protect a defendant from the possibility of juror exposure to prejudicial publicity unconstitutionally infringe on a defendant's right to a fair and impartial jury.  Relying in part on its interpretation of Arkansas law, see Ark. Code Ann. § 16–88–207 (1987) ("In no case shall a second removal of the same cause be allowed"), the trial court in this capital case refused to allow petitioner a second change of venue.  I would grant the petition for certiorari to provide much needed guidance regarding the minimal due process requirements for state change of venue rules.  When, as here, a State frames its venue rule in absolute terms and fails to permit the trial court to consider a particular defendant's right to a jury free from preconceptions regarding his guilt, such a rule violates due process.  See *Sheppard* v. *Maxwell,* 384 U. S. 333, 352 (1966) ("'It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused.  Nevertheless, at times a

procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process'") (quoting *Estes* v. *Texas*, 381 U. S. 532, 542–543 (1965)). Even if I did not believe that this case merited plenary review, I would grant the petition for writ of certiorari and vacate the death penalty, because I continue to believe that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231–241 (1976) (MARSHALL, J., dissenting).

Petitioner was convicted of murdering a police officer and sentenced to death. His conviction was reversed by the Arkansas Supreme Court because of the trial court's failure to grant a change of venue from Sebastian County, where the killing occurred. *Swindler* v. *State*, 264 Ark. 107, 113, 569 S. W. 2d 120, 123 (1978). Petitioner was thereafter retried in Scott County, a small rural county adjacent to Sebastian. Waldron, the seat of Scott County, is only 45 miles south of Fort Smith, the location of both the crime and the first trial.

During *voir dire*, a majority of the 120 venirepersons indicated that they were aware that petitioner had previously been found guilty of the crime and that he was wanted in another State for allegedly murdering two teenagers. More importantly, an overwhelming majority of the venire—98 out of 120—either tentatively or firmly believed that petitioner was guilty. The strong local feelings regarding petitioner's guilt are reflected in the comments of venireperson Thomas Bricksey:

"Q. [H]ave you discussed this case with anybody?

"A. Oh, yes, sir.

"Q. All right, and have these people expressed an opinion to you about this case?

"A. Yes, sir.

"Q. Could you tell me what those opinions were? Did they think the defendant was guilty?

"A. I am afraid it was almost unanimous.

"Q. Did you ever hear anybody state that they thought he was not guilty?

"A. No sir." Tr. 1299.

Similar prejudicial attitudes surfaced in the *voir dire* of three other jurors whom petitioner challenged for cause but who, unlike

Bricksey, ultimately served on petitioner's jury. Each indicated that he believed petitioner was guilty as a result of exposure to pretrial publicity regarding petitioner's first trial. One of the jurors, Thurman Jones, when asked whether he accepted the principle that a person is innocent until proved guilty, replied, "I do, and I would accept it more if he had not been tried. The only thing I am wondering about now, since he has had a trial, and I know about it, I am wondering if he is not going to have to prove to me that he is innocent." Tr. 1149. Milton Staggs, another juror challenged by petitioner, when asked whether he had an opinion about the first verdict, stated, "Well, sure, based on what came out, I don't know how it could be otherwise, you know." Tr. 1223. Henry Sunderman, asked whether "you feel like because [the first jury] came to that conclusion that the defendant may well be guilty," replied "I would say yes." Tr. 979. The trial court, finding that each of the three challenged jurors was capable of setting aside his opinion regarding petitioner's guilt, denied petitioner's request that they be struck for cause.

During the five days of *voir dire*, petitioner requested a change of venue on several occasions. The trial court denied the motions, relying in part on the Arkansas venue statute, § 16–88–207. Tr. 878–879, 1407–1408, 1560. At other points, the trial judge rejected the venue change in apparent reliance on "the fact that [petitioner] still ha[d peremptory] challenges left," Tr. 1075, although petitioner exhausted his challenges before the entire jury was seated. At the close of jury selection, petitioner moved for a mistrial on the ground that the state statute prohibiting a second change of venue unconstitutionally deprived him of a fair and impartial jury. The trial court conceded that "it is quite obvious that this case has received great amounts of publicity, and [that] it is very difficult to find a juror, not only [in] Sebastian County but apparently throughout this part of even the western part of Arkansas, who have *[sic]* not read, heard or seen a great deal about it." Tr. 1559. The court nonetheless denied the motion on the basis of "the present Arkansas law and the record that was made" during jury selection. Tr. 1560.

Petitioner filed a petition for habeas corpus. The District Court denied relief and the Court of Appeals for the Eighth Circuit affirmed, rejecting petitioner's claim that his constitutional right to a fair and impartial jury was compromised by the trial court's refusal to change venue or to strike for cause jurors Jones,

Staggs, and Sunderman. 885 F. 2d 1342, 1347–1350 (1989). The court afforded a "presumption of correctness" to the state-court findings regarding the ability of jurors to set aside whatever prejudice they harbored against petitioner. *Id.*, at 1347. The court also relied on Eighth Circuit precedent, *Simmons* v. *Lockhart*, 814 F. 2d 504 (1987), in which the court had stated that "the fact that a venire panel is well informed on reported news is not by itself prejudicial." *Id.*, at 510. Lastly, the court rejected petitioner's constitutional challenge to Arkansas' change of venue rule because "the trial court based its denial of a second change of venue on the fact that Swindler had not established prejudice resulting from pretrial publicity." 885 F. 2d, at 1347.

We have yet to address squarely the constitutionality of state change of venue rules that limit a trial court's ability to protect a defendant from the effects of prejudicial publicity.* Here, the Court of Appeals attempted to avoid the constitutional question by relying on the trial court's finding that the empaneled jury was not unduly prejudiced. But the Court of Appeals failed to consider the extent to which the Arkansas rule affected the trial court's assessment of prejudice. The transcript makes clear that the Arkansas rule was a strong factor in the trial court's decision and that the court had difficulty separating its merits judgment from its fear that a transfer of venue to another county "would cause a serious jurisdictional problem" under Arkansas law. Tr. 1560.

The state court's refusal to transfer venue may have been substantially affected by Arkansas' venue rule. When, on the basis of such rules, a court fails to protect the defendant from a trial that may be "but a hollow formality," *Rideau* v. *Louisiana*, 373 U. S. 723, 726 (1963), this Court has a special obligation to consider their constitutionality and to specify the due process constraints on their application. I dissent.

---

*The fact that petitioner's claim in this case arises on a federal petition for habeas corpus does not bar its consideration. Cf. *Teague* v. *Lane*, 489 U. S. 288 (1989). Assuming that the rule sought by petitioner is "new," it also falls within the category of "procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.*, at 313. The likelihood of an accurate conviction is no doubt diminished when a defendant is tried by a jury that has prejudged his case.