The appellant, David Freeman, was indicted on June 3, 1988, in a six-count indictment: Count I charged murder where two or more persons are murdered by one act or pursuant to one scheme or course of conduct (§ 13A-5-40(a)(10), Code of Alabama 1975), specifically the murder of M.G. and S.G.; Count II charged the murder of S.G. during a burglary in the first degree (§13A-5-40(a)(4)); Count III charged the murder of M.G. during a burglary in the first degree; Count IV charged the murder of S.G. during a robbery in the first degree (§ 13A-5-40(a)(2)); Count V charged the murder of M.G. during a robbery in the first degree; and Count VI charged the murder of M.G. during rape in the first degree or an attempt thereof (§13A-5-40(a)(3)). The appellant was arraigned on April 21, 1989, and pleaded not guilty and not guilty by reason of mental disease or defect. A jury found him guilty on August 20, 1989, of the capital offenses charged in all six counts of the indictment and, after a sentencing hearing, recommended, by an advisory verdict, punishment by death by a vote of 11 to 1. After a second sentencing hearing before the trial court, the trial court found the existence of two aggravating circumstances and four mitigating circumstances. It weighed the aggravating and mitigating circumstances, while taking into consideration all the evidence offered during the trial, all circumstances and evidence offered on behalf of and pertaining to the appellant, the presentence investigation report, and the recommendation of the jury, and on October 18, 1989, sentenced the appellant to death, thereby accepting the jury's recommendation. From this conviction and death sentence, Freeman appeals.
The state presented evidence tending to show that the appellant killed M.G. and her teenage daughter, S.G., by stabbing them numerous times with a knife and that after killing the victims, he fled the scene in an automobile belonging to M.G. There was considerable demonstrative evidence linking the appellant to the crime scene. Semen found in M. G.'s vagina and blood on a cloth at the scene were consistent with the appellant's blood type.
A comparison of bite marks on the appellant's arm when he was arrested with the victims' dental impressions revealed that the bite marks had been inflicted by S.G. Blood matching that of the women was found on the appellant's clothing and in the automobile that he had driven from the scene. A comparison of the shoe prints at the scene — one being on M.G.'s shirt — with the prints made with the appellant's shoes disclosed that the prints at the scene had been made by the appellant's shoes. The knife used to cut clothing from the victims' bodies and to stab the victims was discovered in the stolen automobile. A latent print lifted from the stolen automobile matched the appellant's fingerprint. A knife sheath that was found in the apartment where the appellant was staying *Page 575 
at the time fit the knife found in the automobile. It is fair to say that the evidence of the appellant's guilt is overwhelming. Further, the appellant confessed to the killings, and his confession was admitted into evidence. The appellant did not testify at either the guilt or sentencing phase of his trial, and the witnesses he presented supported only his plea that he was not guilty by reason of mental disease or defect.
As 1 of his 18 issues, Freeman, who is white, contends that the prosecution's exercise of 9 of its 18 peremptory strikes to strike 9 of the 11 blacks on the venire was racially discriminatory. Defense counsel struck black veniremembers on his sixth and twelfth strikes. No black served on the appellant's jury. As the attorney general concedes, by virtue of Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364,113 L.Ed.2d 411 (1991), Freeman has standing to assert this issue. However, because no motion was made at trial pursuant to Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), this issue must be reviewed under the "plain error" rule, A.R.App.P. 45A.
The attorney general, relying on Kuenzel v. State,577 So.2d 474 (Ala.Cr.App. 1990), argues that the alleged error is not plain error because the appellant has failed to establish a prima facie case of purposeful discrimination. In Kuenzel, the court found that the appellant failed to present a prima facie case where the record showed that the prosecution had used 6 of its 15 strikes to excuse 6 of the 11 black veniremembers and that 2 blacks served on the jury. Id. at 485-86. "For plain error to exist in the Batson context, the record must raise an inference that the state engaged in 'purposeful discrimination' in the exercise of its peremptory challenges." Guthrie v.State, 616 So.2d 913, 914 (Ala.Cr.App. 1992) (citing Ex parteWatkins, 509 So.2d 1074 (Ala.), cert. denied, 484 U.S. 918,108 S.Ct. 269, 98 L.Ed.2d 226 (1987)).
We disagree with the attorney's general's contention and findKuenzel, by its facts, to be distinguishable. The instant record is clearly sufficient to show that a prima facie case of purposeful discrimination could be made by the appellant. See,e.g., Ex parte Bankhead, 585 So.2d 112 (Ala. 1991) (wherein the court, under the plain error doctrine, implicitly found a prima facie case of discrimination where the prosecutor struck 8 of 10 blacks, leaving 2 blacks to serve on the jury); Guthrie v.State (wherein the court, under the plain error doctrine, found a prima facie case of discrimination where the prosecutor used 7 of its 18 strikes to remove 7 of the 9 black veniremembers, and 1 black served as a juror); Walker v. State, 586 So.2d 49
(Ala.Cr.App. 1991) (wherein the court, under the plain error doctrine, implicitly found a prima facie case of discrimination where the prosecutor struck 11 of 15 blacks, leaving 4 to serve).
The prosecutor not only exhibited "[a] pattern of strikes against black jurors on the particular venire," Ex parteBranch, 526 So.2d 609, 623 (Ala. 1987), but "[t]he state used peremptory challenges to dismiss all or most black jurors," id.
Furthermore, we consider that the voir dire offers overwhelming evidence that "the 'jurors in question share[d] only this one characteristic — their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole,' " id. at 662 (quoting People v. Wheeler,22 Cal.3d 258, 280, 148 Cal.Rptr. 890, 905, 583 P.2d 748, 764
(1978)). The record shows that of the 9 black veniremembers struck, 4 are males and 5 are females; 1 is a student, 1 is retired, and the other 7 are employed; 5 are married, 1 is widowed, and the other 3 appeared to be single; and 5 have children — 2 with children the same age as the younger victim and all with children between 10 to 19 years of age. Voir dire questioning also elicited that one is a former deputy sheriff, that one is a scout leader and has a daughter who has been sexually abused, and that several own guns and have friends in the police department. Moreover, we cannot ignore "[t]he past conduct of the state's attorney in using peremptory challenges to strike all blacks from the jury venire," id. In Ex parteBird, 594 So.2d 676, 681 (Ala. 1991), the Alabama Supreme Court recognized "what appears to be a pattern in the use of peremptory strikes by the Montgomery County District Attorney's office." See also Ex parte Yelder, *Page 576 630 So.2d 107 (Ala. 1992); Bui v. State, 627 So.2d 849 (Ala.Cr.App. 1992). Finally, we note that the prosecutor would have had enough remaining strikes to eliminate the other two blacks had defense counsel not struck them first, because after striking the 9 blacks, the prosecutor had 3 strikes remaining. We consider these factors to be sufficient to place on the prosecution "the burden of articulating a clear, specific, and legitimate reason for [each] challenge which related to theparticular case to be tried, and which is nondiscriminatory,"Branch, 526 So.2d at 623 (emphasis in original).
Accordingly, this cause is remanded for the prosecution to provide reasons for its strikes. If the prosecution cannot provide racially neutral reasons for its striking of the 9 black veniremembers, the trial court must order that the appellant receive a new trial. The trial court shall take all necessary action within a sufficient period to allow a return to remand to be filed within 60 days of the date of this opinion. In the event that the trial court finds noBatson violation, the return to remand shall include a transcript of the remand proceedings conducted by the trial court and the trial court's specific findings of fact. The parties, of course, have not relinquished their respective positions regarding the other issues raised on appeal, and this court reserves comment on those issues until the trial court complies with the directions contained in this opinion.
REMANDED WITH DIRECTIONS.
BOWEN, TAYLOR and McMILLAN, JJ., concur.
MONTIEL, J., recuses himself.