632 So.2d 555 (1992)
Darryl Travis WATKINS
v.
STATE.
CR 90-989.
Court of Criminal Appeals of Alabama.
September 30, 1992.
Rehearing Denied November 25, 1992.
*557 Kevin M. Doyle and Bryan A. Stevenson, Birmingham, for appellant.
James H. Evans, Atty. Gen., and Melissa Math, Asst. Atty. Gen., for appellee.
PATTERSON, Presiding Judge.
The petitioner, Darryl Travis Watkins, appeals from the circuit court's denial of his petition for post-conviction relief pursuant to A.R.Cr.P. Temp. 20. In 1982, the petitioner was convicted, after a jury trial, of the capital offense of murder committed during the course of a robbery, in violation of § 13A-5-31, Code of Alabama 1975, and he was sentenced to death. His conviction and sentence were affirmed on appeal. See Watkins v. State, 509 So.2d 1056 (Ala.Cr.App.1983), remanded, 509 So.2d 1064 (Ala.) (for determination of whether belated disclosure of a police report substantially affected the petitioner's right to a fair trial), on remand, 509 So.2d 1067 (Ala.Cr.App.1984), on return to remand, 509 So.2d 1067 (Ala.Cr.App.1985) (conviction and sentence again affirmed), remanded, 509 So.2d 1071 (Ala.) (for resolution of newly asserted issue of whether venireperson who merely expressed strong disapproval of death penalty was erroneously excused by the granting of a challenge for cause), on remand, 509 So.2d 1071 (Ala.Cr.App.1986) (conviction and sentence again affirmed), aff'd, 509 So.2d 1074 (Ala.), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).
Watkins now raises numerous issues regarding the denial of his Rule 20 petition, some of which are of arguable significance since they were merely mentioned in footnotes. However, we need address only the following issues: (1) whether the petitioner's counsel was ineffective at trial for failing to take action to have the record reflect that the prosecution improperly struck black venirepersons in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and (2) whether counsel was ineffective on appeal for failing to supplement the record before the Alabama Supreme Court with facts to support his Batson argument. We note that trial counsel also served as appellate counsel.
The petitioner raised these contentions that his counsel was ineffective because, he says, counsel failed to meet the standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Strickland, the United States Supreme Court articulated the standard for judging the effectiveness of counsel within the framework of the Sixth Amendment of the United States Constitution. The Court provided the following two-part test to determine whether "counsel's assistance was so defective as to require reversal of a conviction or death sentence," id. at 687, 104 S.Ct. at 2064:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Id. To show that counsel's performance was "deficient," a defendant must show that counsel's assistance was unreasonable considering all the circumstances. Id. at 688, 104 S.Ct. at 2064. Counsel's conduct is to be "viewed as of the time of ... [the] conduct." Id. (Empahsis added.) To show that he was "prejudiced" by counsel's conduct, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding *558 would have been different." Id. at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

I.
In his petition and at the hearing on that petition, the petitioner argued that counsel, at trial, should have had the record reflect the racial composition of the venire and the race of each venireperson struck by the state so that, on direct appeal, he could have successfully presented a Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), argument.
The petitioner was tried four years before Batson was decided. However, because Batson is applied retroactively to cases on direct appeal when the Batson opinion was issued, Ex parte Jackson, 516 So.2d 768 (Ala.1986), the petitioner raised a Batson claim during his last appeal before the Alabama Supreme Court, and that court chose to address the issue. See Ex parte Watkins, 509 So.2d 1074 (Ala.1987). In disposing of this claim adversely to the petitioner, the court stated the following:
"[W]e have carefully reviewed the record in this respect and we cannot find any plain error. Although the record does show that the defendant is black and the victim was white, it does not show that the state exercised any of its peremptory challenges to remove prospective black jurors from the venire. The record as a whole simply does not raise an inference that the state was engaged in the practice of purposeful discrimination.... The defendant cannot successfully argue that error is plain in the record when there is no indication in the record that the act upon which error is predicated ever occurred (i.e., the state's use of its peremptory challenges to exclude blacks)."
Id. at 1076-77. The petitioner argued in the Rule 20 proceeding that, had the appellate record shown that the prosecution exercised its peremptory challenges to remove 13 of the 14 black veniremembers, this issue would not have been decided adversely to him on appeal.[1]
In rejecting the petitioner's claim that trial counsel was ineffective in this regard, the circuit court found the following:
"The [c]ourt finds that the jury in this case had only one black member and the [s]tate used peremptory challenges to exclude a number of blacks from the jury. The evidence presented indicates that the defendant could have made out at least a prima facie case that the [s]tate used peremptory challenges to improperly exclude blacks from Petitioner's jury by what is now generally referred to as a Batson motion. However, it must be noted that this trial preceded Batson by four years. Trial counsel was not ineffective by failing to make record upon which this claim could later be raised and was not ineffective for failing to object to this under the state of the law at the time of trial. This issue was raised on direct appeal after the decision in Batson v. [Kentucky], 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)."
"A counsel's pre-Batson failure to raise a Batson-type claim does not fall below reasonable standards of professional competence, and thus does not render counsel's assistance constitutionally ineffective." Pitts v. Cook, 923 F.2d 1568, 1574 (11th Cir.1991). See James v. State, 564 So.2d 1002 (Ala.Cr. App.1989); Morrison v. State, 551 So.2d 435 (Ala.Cr.App.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990). See also Poole v. United States, 832 F.2d 561 (11th Cir.1987), cert. denied, 488 U.S. 817, 109 S.Ct. 54, 102 L.Ed.2d 33 (1988). Counsel, therefore, cannot be faulted for not having prepared the record in a pre-Batson trial (by four years) to support a Batson claim. See Thompson v. State, 581 So.2d 1216, 1236 (Ala.Cr.App.1991), cert. denied, ___ U.S. *559 ___, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992) (counsel not ineffective for failing to act on possible future developments in law). Counsel did not have duty to file a fully adequate record until after Batson was decided, as will be discussed below.

II.
The petitioner further argued that counsel was ineffective on appeal because, when asserting the Batson claim before the Alabama Supreme Court, he failed to move to supplement the record to show the racial composition of the venire and the race of each venireperson struck by the prosecution, in order to factually support the Batson claim and, thus, present plain error. In finding this allegation to have no merit, the circuit court stated the following:
"It is the Court's opinion that [A.R.App.P. 10(f)] is not applicable because the matter sought to be added was not omitted by error, accident or misstatement. It is also clear that the Appellate Court on its own initiative could order this correction if it considered it necessary or appropriate."
In addressing this issue, we are mindful of the following:
"[E]very criminal trial must conform to constitutional standards, [and] our scrutiny in capital trials must be particularly sensitive. Capital trials are unique and ponderous occurrences, distinct from any other exercise of state power. When the machinery of the state seeks to extinguish a life, we must especially ensure that the process employed to accomplish that end complies with the defendant's right to a fair trial by an impartial jury."
Brown v. State, 571 So.2d 345, 352 (Ala.Cr. App.), writ quashed, 571 So.2d 353 (Ala.1990), vacated, ___ U.S. ___, 111 S.Ct. 2791, 115 L.Ed.2d 966, on remand, 586 So.2d 991 (Ala. Cr.App.1991), rev'd, 632 So.2d 14 (Ala.), remanded, 632 So.2d 17 (Ala.Cr.App.1992) (quoting Trujillo v. Sullivan, 815 F.2d 597, 606-07 (10th Cir.), cert. denied, 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987)).
We analyze the issue before us with the following considerations: First, Batson was decided before the petitioner's third and last appeal to the Alabama Supreme Court. Second, Batson is to be applied retroactively to all cases pending on direct appeal when that decision was handed down by the United States Supreme Court, and the petitioner's counsel was aware of this fact, because he in fact raised this issue before the Alabama Supreme Court. See Ex parte Watkins, 509 So.2d 1074. Third, because appellate counsel also had served as trial counsel, he knew or should have known the racial composition of the venire and the race of each venireperson struck by the prosecution. In fact, he testified at the Rule 20 hearing that the prosecution exercised 13 of its 14 strikes to remove 13 of the 14 black veniremembers, an assertion not disputed by the state at the hearing or on appeal. Fourth, because counsel served as trial as well as appellate counsel, he knew or should have known that the appellate record did not reflect the necessary Batson information and, therefore, that it would not support the Batson claim before the Alabama Supreme Court. Finally, after reviewing the materials filed in the supreme court in regard to this case and that court's opinion, 509 So.2d 1074, we find no indication that counsel moved to supplement the record. We recognize that while it is a fundamental principle that assertions in brief are not cognizable by an appellate court, see Webb v. State, 565 So.2d 1259 (Ala.Cr.App.1990), we note that even counsel's assertions in his brief to the Alabama Supreme Court did not put that court on notice of any facts upon which to judge the existence of a Batson claim. Absolutely no factual support for a Batson claim was asserted, other than the fact that the petitioner is black.
The attorney general argues and the trial court found that A.R.App.P. 10(f), then in effect (superseded by A.R.App.P. 10(g), dated August 27, 1991, and applicable to proceedings in which notice of appeal is filed on or after October 1, 1991), does not provide a procedure for supplementing the record with anything not "omitted from the record by error or accident." The attorney general reasons that, because the strike list was not a necessary part of this or any record in 1982, the strike list was omitted intentionallynot erroneously or accidentally. He further asserts that the petitioner has not established *560 that he was prejudiced by his counsel's failure to move to supplement the record because, he argues, the petitioner has failed to prove that there is a reasonable probability that the Alabama Supreme Court would have granted a Rule 10(f) motion had one been filed.
Rule 10(f) stated the following:
"If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court either before or after the record is transmitted to the appellate court, or the appellate court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the appellate court."
This rule is obviously tempered, particularly in a death penalty case, by the provision in Rule 1 that the Alabama Rules of Appellate Procedure "shall be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits." Moreover, Rule 2(b) provides that, "[i]n the interest of expediting decision, or for other good cause shown, an appellate court may suspend the requirements or provisions of any of these rules [, except Rules 4(a)(1) and 39(b),] in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction."
Contrary to the attorney general's argument, we fail to see the significance of any reason why the desired Batson information was not included in the record when the record was first submitted to the court. Rather, we consider it important that, when counsel asserted the Batson argument to the Alabama Supreme Court, the Batson information (1) was proper for a Rule 10(f) motion in the sense that it is "what occurred" in the trial court, see Thomas v. State, 550 So.2d 1057, 1062 (Ala.Cr.App.), aff'd, 550 So.2d 1067 (Ala.1989); (2) was obviously available and undisputed;[2] and (3) was crucial to a review of the issue by the Alabama Supreme Court.
Rule 10(f) has been liberally construed, as the court in Weaver v. State, 401 So.2d 344, 348 (Ala.Cr.App.1981), explained as follows:
"By its plain wording Rule 10(f) extends broad coverage and protection to the parties in having material omissions of `what occurred' added to the record. Moreover, Rule 10(f) provides broad power in the appellate courts to direct that omissions be corrected to determine `all other questions as to the form and content of the record.'
". . . .
"... [We are] mindful that Rule 10(f) provides broad leeway in making the record conform to the truth,' and mindful that the appellate rules `shall be construed so as to assure the just ... determination of every proceeding on its merits'...."
We must take the liberty, in this case, of speculating how the Alabama Supreme Court would have treated a Rule 10(f) motion, or the like, had the petitioner's counsel filed one. However, we are not completely without guidance in this determination. In Edwards v. State, 287 Ala. 588, 253 So.2d 513 (1971), the appellant, before submission, had filed a petition for certiorari review to correct the record, alleging, among other things, that the transcript pertaining to the proceedings concerning the trial court's qualification of jurors on the matter of capital punishment was incomplete; "before submission pursuant to said petition a writ of certiorari [had been] granted commanding the Clerk ... to make *561 a diligent search of the records and procedure and to certify a full, complete transcript" of the requested items, id. at 593, 253 So.2d at 518; and the clerk instead had filed a certificate stating, in pertinent part, "The Presiding Judge did qualify the jury as to capital punishment but no one was excused for this qualification," id. at 592, 253 So.2d at 517. Upon submission to the Alabama Supreme Court, the appellant complained in brief that veniremembers had been excused in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), which was released 14 months after the appellant's trial. He further asserted that he remembered that certain veniremembers had been excused because they had stated that they did not believe in capital punishment. Based on the clerk's certificate and on the absence of a transcript of the actual proceedings, the Alabama Supreme Court held, "[W]e cannot say that there was a violation of the rule pronounced in Witherspoon, supra." 287 Ala. at 592, 253 So.2d at 517. Then, the procedural history progressed as follows:
"On rehearing, the appellant presented strong argument pertaining to this court's treatment of the matter of the qualification of jurors concerning capital punishment....
"On April 8, 1971, upon reconsideration of this matter this Court held that such language in the certificate of said Clerk was not responsive to the writ; constituted an unacceptable conclusion; and was merely a narrative statement. The Court then withdrew its original opinion and directed the Clerk of this Court to issue a supplementary writ of certiorari requiring the Clerk of the Circuit Court of Sumter County to return to this Court a full, true and complete transcript of the proceedings pertaining to the qualification of the jurors concerning capital punishment."
Id. at 593, 253 So.2d at 518. The court offered the following explanation for these actions:
"The Supreme Court of the United States in Witherspoon v. Illinois, ... stated the following:
"`... a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected....'
"This Court is of the opinion that it is implicit in the Witherspoon holding that a full and complete transcript adequate for the purposes of appellate review must contain the proceedings incident to the selection and qualification of the jurors pertaining to capital punishment. Therefore, in order to determine whether the requirements of Witherspoon are met, neither this Court nor the trial courts should give force to any statutory authority, rule of court, or prior decision of this Court which would authorize the omission from the transcript of that portion of the proceedings pertaining to the qualification of jurors concerning capital punishment."
Id. at 595, 253 So.2d at 520.
By analogy, we believe that the Alabama Supreme Court would have granted a Rule 10(f) motion in the instant case had one been filed. In reaching this conclusion, we consider to be worthy of great emphasis the following mandate by the Edwards court: "[A] full and complete transcript adequate for the purposes of appellate review must contain the proceedings incident to the selection and qualification of the jurors." Although the court qualified this directive by noting that it applied to the selection and qualification "pertaining to capital punishment," we believe the Alabama Supreme Court would find the directive to be no less applicable here. Emanating from this mandate in Edwards are two additional messages, which we have also considered in reaching our conclusion: (1) "a full and complete transcript adequate for the purposes of appellate review" of a constitutional issue affecting the validity of a death sentence is so necessary that the court will go to great lengths, as it did in Edwards, to obtain an adequate record for review, and (2) the Alabama Supreme Court will not give *562 any force to any authority that would authorize the omission from the transcript of any portion of the proceedings pertaining to such an issue. Cf. Huntley v. State, 627 So.2d 1013, 1015 (Ala.1992) (wherein the court held that "considerations of judicial economy require a record of all the evidence bearing on the issue of alleged discrimination") (emphasis in original).
We find further support for our conclusion that there is a reasonable probability that the Alabama Supreme Court would have granted a Rule 10(f) motion in Ex parte Godbolt, 546 So.2d 991, 997-98 (Ala.1987). There the court recognized as "sound" the approach expounded in United States v. Selva, 559 F.2d 1303, 1306 (5th Cir.1977), that where trial counsel is also appellate counsel and where the record on appeal is incomplete, the conviction will be reversed if the appellant makes "a specific showing of prejudicei.e., appellant must show that failure to record and preserve the specific portion of the trial proceedings visits a hardship upon him and prejudices his appeal." The Selva court explained the rationale of this rule as follows:
"When a defendant is represented on appeal by the same attorney who defended him at trial, the court may properly require counsel to articulate the prejudice that may have resulted from the failure to record a portion of the proceedings. Indeed, counsel's obligation to the court alone would seem to compel him to initiate such disclosure. The attorney, having been present at trial, should be expected to be aware of any errors or improprieties which may have occurred during the portion of the proceedings not recorded."
559 F.2d at 1306 (quoted in Godbolt, 546 So.2d at 997; emphasis added). By adopting Selva as "sound," the Alabama Supreme Court appears to have signaled that, in a situation such as the one presented here, it would expect that, because of counsel's obligation to the court, counsel would be compelled to initiate disclosure of any prejudicial errors that may have occurred below, but that may not have been recorded. Cf. Robinson v. State, 441 So.2d 982, 988 (Ala. Cr. App.1983) (wherein the court stated that "[c]ounsel for an appellant ... is not to be absolved of all responsibility in submitting a case on appeal without first having determined whether the record proper and the reporter's transcript of the proceeding reflect all of the proceedings in the trial court that are necessary for a proper disposition in the appellate court of any and all issues raised by appellant").
We have resorted to one further consideration in concluding that the Alabama Supreme Court would have probably granted a Rule 10(f) motion: fundamental fairness. Numerous death penalty cases have been remanded to the trial court for a Batson hearing where no objection was presented to the trial court, but where apparently by chance, the record contained sufficient Batson information to reflect plain error. See, e.g., Ex parte Adkins, 600 So.2d 1067 (Ala. 1992); Ex parte Bankhead, 585 So.2d 112, 117 (Ala.1991); Freeman v. State, [Ms. 90-279, September 18, 1992], 1992 WL 228008 (Ala.Cr.App.1992); Guthrie v. State, 616 So.2d 913 (Ala.Cr.App.1992); Walker v. State, 586 So.2d 49 (Ala.Cr.App.1991). Even more compelling here is the death penalty case of Parker v. State, 587 So.2d 1072, 1077 (Ala.Cr.App.1991), where the court found that the record on appeal did not support the appellant's argument on direct appeal "that the prosecutor used peremptory strikes to remove eight of the nine black members of the venire." Yet, relying on Ex parte Bankhead, the court noticed the matter under the "plain error doctrine" and remanded for a Batson hearing. See also Nickerson v. State, 539 So.2d 337 (Ala.Cr.App.1987) (wherein the court remanded a noncapital conviction where the record reflected that five blacks were on the venire and that counsel, in his mistrial motion, merely asserted that the prosecution struck blacks). Cf. Duncan v. State, 575 So.2d 1198 (Ala.Cr.App.1990), cert. denied, 575 So.2d 1208 (Ala.1991) (wherein the court, "out of an abundance of caution because this case involves the death penalty," remanded the cause for a Batson hearing despite the fact that, at that time, the white appellant had no cognizable standing to assert the issue). But see Freeman v. State, 555 So.2d 196, 214-15 (Ala.Cr.App.1988), aff'd 555 So.2d 215 (Ala.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2604, 110 L.Ed.2d 284 *563 (1990) (wherein, in a death penalty case, the court found that a Batson issue was not properly before the court because the jury strike list attached to a Rule 10(f) motion denied by the trial court should not be considered, because the designations of race on the list are merely assertions of counsel unsupported by the record, and because, during a hearing on the motion, the trial court found that no record of the voir dire examination exists). Compare Smith v. State, 588 So.2d 561, 582-83 (Ala.Cr.App.1991) (wherein the court ordered that the record in this death penalty case should be supplemented with regard to jury strikes where defense counsel, in a motion for new trial, implied without contest that the prosecution had struck a number of blacks and where the record on appeal was not correctly supplemented after the trial court had granted the appellant's Rule 10(f) motion). It would seem that, in consideration of these cases, the petitioner had he filed a motion to supplement the recordwould not have been arbitrarily thwarted in effectively asserting a Batson issue under the "plain error doctrine" because simply either (1) evidence of that violation, indisputably in existence, was not, by chance, included in the record when it was originally submitted, or (2) the Alabama Supreme Court would have ignored the standard to which other appellants had been held. Finally, we note that the petitioner's co-defendant received a new trial as the result of the prosecution's failure to meet its Batson burden. Raines v. State, 515 So.2d 82 (Ala.Cr.App.1987). Cf. Ex parte Floyd, 571 So.2d 1234, 1236 n. 3 (Ala.1990) (wherein, in reviewing the denial of a Rule 20 petition on a death penalty conviction, the court held that Floyd's Batson claim asserted, but not reviewed, in a petition for writ of certiorari to the United States Supreme Court on direct appeal should be reviewed in the Rule 20 proceeding, since "[t]he application of Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) [(holding that Batson applies to all cases pending on direct appeal)] would seem to be especially applicable in a death case, and especially in view of the fact that Batson was applied to one of petitioner's co-defendants").
We find that the petitioner did not have to show any prejudice other than the reasonable probability that the Alabama Supreme Court would have granted his a motion to supplement the record to show that a Batson hearing was warranted had one been made. See Ex parte Yelder, 575 So.2d 137, 139 (Ala.1991) (wherein the Alabama Supreme Court carved out an exception to the Strickland requirement that prejudice be affirmatively proved by holding that "the failure of trial counsel to make a timely Batson objection to a prima facie case of purposeful discrimination by the State in the jury selection process through it use of peremptory challenges is presumptively prejudicial to a defendant"). With the requested evidence in the record, the record would have clearly supported a finding that the petitioner was entitled to a Batson hearing, and we believe that the Alabama Supreme Court would have unquestionably remanded. In the recent case of Huntley v. State, 627 So.2d at 1014, the Alabama Supreme Court held that, "[u]pon the exercise of the prosecution's first peremptory challenge of a black veniremember, a defendant is entitled to a Batson hearing." It further stated that, "if it determines that an inference [of discrimination] clearly exists, [it] will not hesitate to remand a cause to the trial court with directions to examine the State's explanations." Id. at 1015.
We note that the court in Magwood v. State, 553 So.2d 635 (Ala.Cr.App.1989) (wherein the petitioner petitioned the circuit court for a writ of error coram nobis), was confronted with a situation similar to the instant case. In Magwood, this court noted the following:
"Magwood contends that a Batson claim should have been raised on rehearing before the Alabama Supreme Court. He argues that that court would have considered the issue if his counsel had `supplemented' the record. He reasons that if a claim had been so raised, a hearing might have been obtained. The trial record does not support the contention that there would have been a Batson issue, and we can do no more that speculate on the outcome. The record proper does not include the data *564 which Magwood now contends might have given him an issue.
"Based on what a supplemental record might show, we cannot conclude that the second prong of Strickland would have been met. We cannot conclude that the outcome would have been different.
"Based on this record, there is no Batson issue presented. It is clear that under the rule of the Swain case, counsel's performance was not ineffective. The case was on rehearing before the Alabama Supreme Court. Should counsel, at that point, have asked to supplement the record? Part of the record that was omitted is the only thing that could have been added to the record. There was a later effort to secure from the clerk's office data that were not part of the record proper. Under the most liberal reading of the word `record,' it is extremely doubtful that the data concerning the racial makeup of the venire and the race of the jurors struck could be considered part of the record. Even if these data were considered to be part of the record, this does not mean that there was a Batson violation."
Id. at 639. We distinguish Magwood because Magwood, as it applies the Strickland test to Batson challenges, is no longer the law. See Ex parte Yelder (wherein the court held that when counsel fails to raise a Batson objection at trial, prejudice will be presumed). In light of the Edwards principles discussed above, we further disclaim the language that "it is extremely doubtful that the data concerning the racial makeup of the venire and the race of the jurors struck could be considered part of the record."
Thus, we conclude that based on the knowledge that counsel possessed or should have possessed at the time of the petitioner's appeal in which he raised Batson, counsel should have moved to supplement the record before the Alabama Supreme Court, and any failure to do so was deficient performance within the meaning of Strickland v. Washington. Compare Cochran v. State, 548 So.2d 1062, 1070 (Ala.Cr.App.), cert. denied, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208 (1989) (wherein the court held that appellate counsel was not ineffective for failing to raise a Batson issue where the trial record did not suggest factual support for such issue and where there was no indication that appellate counsel, who had not represented petitioner at trial, should have been aware that matters outside the record might prove a Batson violation). Because counsel failed to move to supplement the record to show that the prosecution exercised 12 of its 13 peremptory challenges to remove 12 of 13 blacks from the venire, the petitioner was in effect denied the opportunity to have his Batson argument reviewed by the Alabama Supreme Court. Thus, the trial court erred by denying the petitioner's Rule 20 petition on this ground.
As we began this discussion, we so conclude: "When the machinery of the state seeks to extinguish a life, we must especially ensure that the process employed to accomplish that end complies with the defendant's right to a fair trial by an impartial jury." Brown, 571 So.2d at 352. Because of counsel's failure to have the record supplemented, we are not so ensured; we cannot say that the process employed to accomplish the penalty of death, in this case, complied with the petitioner's right to a fair trial by an impartial jury.
"The discriminatory use of peremptory challenges by the prosecution causes a criminal defendant cognizable injury, and the defendant has a concrete interest in challenging the practice.... This is not because the individual jurors dismissed by the prosecution may have been predisposed to favor the defendant; if that were true, the jurors might have been excused for cause. Rather, it is because racial discrimination in the selection of jurors `casts doubt on the integrity of the judicial process,' ... and places the fairness of a criminal proceeding in doubt."
Powers v. Ohio, 499 U.S. 400, 411, 111 S.Ct. 1364, 1371, 113 L.Ed.2d 411 (1991) (citations omitted; quoted in Ex parte Adkins, 600 So.2d at 1069).
Because we do not know yet whether the petitioner's trial was marred by purposeful racial discrimination, see Yelder v. State, 575 So.2d 131, 136 (Ala. Cr.App.1990) (Bowen, J., dissenting), we remand this cause to the circuit court to hold a Batson hearing to *565 provide the petitioner the opportunity to present all available evidence of a prima facie case of discrimination and, if that evidence raises an inference of discrimination, to give the prosecution the opportunity to justify its challenges. See Ex parte Huntley, 627 So.2d at 1014. The circuit court shall take all action directed in sufficient time to permit the circuit clerk to make a proper return to this court at the earliest possible time within 60 days of the release of this opinion. In the event that the court finds no Batson violation, the return to remand shall include a transcript of the remand proceedings and the circuit court's specific findings of fact. The parties, of course, do not relinquish their respective positions regarding the other issues raised on appeal, and this court reserves comment on them until a proper return is made to this court.
REMANDED WITH DIRECTIONS.
BOWEN and McMILLAN, JJ., concur.
TAYLOR, J., dissents with opinion.
MONTIEL, J., dissents with opinion.
TAYLOR, Judge, dissenting.
I dissent from the decision of the majority, which concludes that appellate counsel rendered ineffective assistance by failing, when this cause was pending before the Alabama Supreme Court, to move, pursuant to Rule 10(f), A.R.App.P. (now Rule 10(g), A.R.App. P), to supplement the record with the transcript of the voir dire examination of the prospective jurors.
This decision conflicts with the reasoning and result of James v. State, 564 So.2d 1002 (Ala.Cr.App.1989). In James, this court held that trial counsel did not render ineffective assistance in not making a motion pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). James was tried before the Batson decision was released. This court on many occasions has declined to hold assistance of counsel ineffective for not forecasting changes in the law. James, supra; Morrison v. State, 551 So.2d 435 (Ala. Cr.App.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990), and cases cited therein. "The devil himself knoweth not the mind of man."
At the time of the trial in this case, Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), was the law.
"Under Swain, a defendant alleging that the prosecution exercised its peremptory challenges to discriminate unlawfully against a particular group had to demonstrate that the State had systematically excluded members of that group from juries over a period of time."
James, 564 So.2d at 1005. When a defendant was tried under the rules applicable in Swain, there was no procedure to preserve a record such as that contemplated under the Batson decision.
With that in mind, I conclude that appellate counsel's assistance was not made ineffective by the failure to move to supplement the record on appeal. At that time, the procedures for establishing a "Batson violation" did not exist. It would be strange indeed if counsel had proceeded to suggest, and then had been allowed to establish a prima facie case, according to judge-made law that was then only a gleam in the eye. If there is in the record of the voir dire examination something that may be pertinent, the appellant is entitled to have it considered. If that is the situation, this court, on its own motion, should send this cause back for the circuit court to supplement the record. In my opinion, appellate counsel did not render ineffective assistance of counsel as defined by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
MONTIEL, Judge, dissenting.
I respectively dissent from the majority's conclusion that the petitioner received ineffective assistance of counsel for counsel's failure to move to supplement the record pursuant to Alabama Rules of Appellate Procedure 10(f) before the Alabama Supreme Court. Rule 10(f) is applicable to situations where matters have been "omitted from the record by error or accident" Rule 10(f) is not intended to supplement the record because of changes in the law that have occurred since the time of trial.
*566 It is apparent from the record and review of this case that the petitioner received a fair trial and was provided with effective assistance of counsel pursuant to the Sixth Amendment to the United States Constitution.
NOTES
[1] At the evidentiary hearing, defense counsel first testified that the prosecution used 12 of its 13 strikes to excuse 12 of the 13 black veniremembers. Counsel later testified that the prosecution exercised 13 of its 14 strikes to excuse 13 of the 14 black veniremembers. However, our reading of Exhibit 11 (defense co-counsel's personal strike list and a list of all persons summoned for that week's jury service) reveals that 13 blacks were on the venire and that the prosecution used 12 of its 13 strikes to excuse 12 blacks. For purposes of this opinion, we will assume that the "12 of 13" description is the correct one.
[2] We so conclude from the following facts: (1) the instant record evidences existing documents (petitioner's exhibit no. 11) that reflect the strikes and the races of the excluded veniremembers and jurors, and (2) the information was in no way disputed by the prosecution or refuted by any evidence. See also James v. State, 564 So.2d 1002, 1005 (Ala.Cr.App.1989) (in establishing his burden for his claim of trial counsel's ineffectiveness for failing to assert a Batson claim, the appellant presented testimony from the circuit clerk pertaining to the prosecution's use of its strikes).